1  Tatiana Ingman (Bar No. 314284)
2  Law Office of Tatiana Ingman
   12734 Cumpston Street
3  Valley Village, CA 91607
   Tel. (718) 614 8228
4  E-Mail: lawofficeoftingman@gmail.com
5
6  Attorney for Defendant DUPART FAMILY
   ASSOCIATES, LLC., ET AL.
7

8              **UNITED STATES DISTRICT COURT**
9
        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11 | UNITED AFRICAN-ASIAN | Case No.:  2:20-cv-10797-FMO-AFM |
12 | ABILITIES CLUB, ON BEHALF OF ITSLEF AND ITS MEMBERS; | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO** |
13 | ANNA MARIE WIGGINS, An Individual, ON BEHALF OF | **DISMISS AND RELATED RELIEF UNDER RULE 12 OF THE** |
14 | ROBERT AARON MCKISSICK | **FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF** |
15 | Plaintiffs, | **POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
16 | v. |
17 | DUPART FAMILY ASSOCIATES, | HEARING DATE: April 8, 2021 |
18 | LLC.; and DOES 1 through 10, Inclusive | Time: 10:00 AM |
19 | Defendants. | Place: United States Courthouse, |
20 |  |   350 W. First Street |
21 |  |   Los Angeles, CA 90012 |
22 |  |   Courtroom 6D |
23 |  | Before: Honorable Fernando M. Olguin |
24 |  | Complaint filed:  November 26, 2020 |
25 |  | Trial Date: None set |
26
27
28

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

**PLEASE TAKE NOTICE** that on **Thursday, April 8, 2021** at **10:00 a.m.** or as soon thereafter as the matter may be heard in the courtroom of the Honorable Fernando M. Olguin, in the United States Courthouse, 350 W. First Street, Courtroom 6D, 6th Floor, Los Angeles, CA 90012, Defendant Dupart Family Associates, LLC., et al. ("Defendant") will and hereby does move this Court for an order dismissing Plaintiffs' Complaint pursuant to (1) Federal Rule of Civil Procedure 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction, (2) Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state a claim upon which relief can be granted, and seeking such other and further relief as is just and equitable.

This motion is brought pursuant to Rules 12(b)(l) and 12(b)(6) of the Federal Rules of Civil Procedure and is supported by this Notice of and Motion, the Memorandum of Points and Authorities, the declarations and evidence concurrently filed, and such other argument and evidence as may be presented at the hearing.

This motion is made following conference with opposing counsel pursuant to L.R. 7-3.

DATED: March 5, 2021                    LAW OFFICE OF TATIANA INGMAN

                                        By: /s/ Tatiana Ingman

                                        Attorney for Defendant DUPART FAMILY
                                        ASSOCIATES, LLC., ET AL.

**TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF REQUESTED RELIEF…..…..6

II.    STATEMENT OF FACTS…………………………………….....9

       A. Plaintiffs' allegations……………………………………………..9

       B. Allegations Regarding Investigation and Notice……………….…..12

       C. Plaintiffs' Theories of Liability……………………………….....12

       D. Summary of Meet and Confer Efforts………………………..…..13

III.   ARGUMENT……………………………………………………13

       A. Plaintiffs Lack Standing………………………………………...13

       B. Plaintiffs Fail To State A Claim On Which Relief Can Be Granted…14

          1. Plaintiffs' Causes Of Action Based On The FHA Should Be
             Dismissed……………………………………………………15

          2. Plaintiffs' Claims of Violations of the California Fair Housing Act
             Should be Dismissed………………………………………...17

          3. Plaintiffs' ADA Claims Fail And Should Be Dismissed……..……18

          4. This Court Should Decline To Exercise Jurisdiction Over The
             Remaining State Law Claims……………………….………19

       C. This    Case    Should    Be    Dismissed    Under    Rule
          12(b)(4)………………………………………..….…..……20

IV.    CONCLUSION…………………………………………………21

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*
    556 U.S. 662, 678 (2009)……………………………………………………16

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)……………………..………………………………..14

*Carnegie-Mellon Univ. v. Cohill*
    484 U.S. 343 (1988)………………...…………………………………….20

*City of Chicago v. Int'l College of Surgeons*
    522 U.S. 156 (1997)………………………...…………………………...19, 20

*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Props. Tr.*
    867 F.3d 1093 (9th Cir. 2017)……………………………………………18

*Doran v. 7-Eleven, Inc.*
    524 F.3d 1034, 1040 (9th Cir. 2008)…………………………………….8

*DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*
    453 F.3d 1175, 1179 (9th Cir. 2006)…………………………………...16

*Executive Software N Am., Inc. v. United States Court for Central District of Cal.*
    24 F.3d 1545(9th Cir. 1994)…………………………………...……………..20

*Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*
    666 F.3d 1216 (9th Cir. 2012)……………………………………….………7, 14

*Gingerich v. White Pigeon Community Schs.*
    736 F.Supp. 147 (W.D.Mich.1990)………………………………….…..20

*Gompper v. VISX Inc.*
    298 F.3d 893 (9th Cir. 2002)…………………………………………...14

*Havens Realty Corp. Coleman*
    455 U.S. 363, 379 (1982)……………………………………………….6, 13

*Hunt v. Washington Apple Adver. Comm'n*
    432 U.S. 333 (1977)……………………………………………………..6, 13

*Molski v. Winery*
    381 F. Supp. 2d 1209 (C.D. Cal. 2006)……………………………...7, 21

*Pickern v. Best Western*
    194 F.Supp.2d 1128 (E.D. Cal. 2002)………………………………….19

*Rutherford v. Evans Hotels, LLC*
    Case No. 18-435 (S.D. Ca. Sept. 3, 2020)……………………………….8

*San Pedro Hotel Co., Inc. v. City of L.A.*

159 F.3d 470 (9th Cir. 1998)…………………………………………………..20

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001)……………………………..…………15

*Texas Dep't of Haus. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*
(2015) 135 S. Ct. 2507……………………………………….…………..…..17

*United Mine Workers v. Gibbs*
383 U.S. 715 (1966)……………………………………..………………..20

*Wander v. Kaus*
304 F.3d 856 (9th Cir. 2002)…………………………………………………..19

**Statutes**

28 U.S.C. §1332………………………………………………………………...20
28 U.S.C. §1367……………………………………………………...19, 20, 21
42 U.S.C. § 3604……..………………………………………………passim
42 U.S.C. §12188……………………………………………………..passim

**Other Authorities**

"Fair Housing Act"……………………………………………………passim
"Americans With Disabilities Act of 1990," 101 H. Rpt. 485………………..…22

**Rules**

FED. R. CIV. P. 8(a)………………………………………………..………..17
FED.R.CIV.P. 12(b)(1)…………………………………………………..13, 27
FED.R.CIV.P. 12(b)(6)……………………………………………………27

MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Dupart Family Associates, LLC ("Defendant" or "DFA") hereby submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint and respectfully states as follows:

I. INTRODUCTION AND SUMMARY OF REQUESTED RELIEF

Plaintiff United African-Asian Abilities Club ("UAAAC" or the "Club"), along with individual named plaintiffs described below, brought this action for discriminatory housing practices against DFA. UAAAC, a club, is a serial filer of virtually identical complaints against residential landlords across California. The complaints are based on the internet research of UAAAC's president, Sharon Riguer, who is located in the Philippines, disbarred lawyer Thomas Pinnock, also in the Philippines, and site visits by unnamed UAAAC club members. Upon information and belief, counsel Wakefield is Mr. Pinnock's former law partner, his paralegal is Mr. Pinnock's wife, and several UAAAC club members are part of Pinnock's family.

Defendant is a small family owned and managed real estate holding company, a sector hit particularly hard by the ongoing pandemic. Defendant is committed to the values embodied in the Fair Housing Act, the Americans with Disabilities Act, and related legislation.  Should this case proceed beyond the pleadings stage, the evidence will show that DFA complied with its obligations under all applicable laws and was met with dilatory litigation tactics, frustrating the purposes of the statutes.

Defendant respectfully submits that this case should be dismissed.

First, this Court lacks subject matter jurisdiction for lack of standing. Plaintiff UAAAC lacks standing under *Hunt v. Washington Apple Adver. Comm'n*,  432 U.S. 333 (1977) and *Havens Realty Corp. Coleman,* 455 U.S. 363, 379 (1982). Representational standing by an organization generally is unavailable where, as here, a particular individual's particular disability is the gravamen of the cause of action

and that individual is already a plaintiff. *See Molski v. Winery*, 381 F. Supp. 2d 1209 (C.D. Cal. 2006). Representational standing is further unavailable in the absence of facts demonstrating discriminatory conduct by the Defendant toward UAAAC (or anyone). Representational standing is unavailable in the absence of facts demonstrating that Defendant's purported conduct impeded UAAAC's mission. Unlike in other cases, UAAAC's stated mission is to advocate on behalf of its members with disabilities when their civil rights and liberties have been violated. *Id*. at ¶10. *See Fair Housing Council v. Roommate.com LLC,* 666 F.3d 1216, 1219 (9th Cir. 2012)(organizational standing available to assert FHA claims where organization diverted resources to outreach to the public to educate them of their rights vis-à-vis defendant's specific conduct, not to the pursuit of litigation claims).

This Court also lacks subject matter jurisdiction over the claims of named Plaintiffs Anna Marie Wiggins ("Wiggins") and Robert Aaron McKissick ("McKissick", Wiggins and UAAAC, collectively, the "Plaintiffs") for failure to allege an injury in fact, as discussed more fully below.

Second, this case should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiffs fail to state a claim.

With regard to the claims under the Fair Housing Act, 42 U.S.C. §§ 3604, et seq., Plaintiffs argue failure to make a reasonable accommodation and discrimination. Assuming Plaintiffs have properly pled that they are a member of the protected class, Plaintiffs have not pled the existence of a policy which affects the plaintiff's class or that enforcement of that policy under the particular facts of the case is prohibited by law. Nor have Plaintiffs pled what accommodation requests they made, to whom, why, or what happened after those requests were made, other than the filing of the Complaint.

With regard to the ADA, to survive a motion to dismiss for lack of subject matter jurisdiction and/or failure to state a claim, Plaintiffs must, at the very minimum, make a plausible allegation of actual knowledge of a barrier to a disabled person's use and enjoyment of the property. While Wiggins states the conclusion that

she had such actual knowledge, the Complaint implies that Wiggins' knowledge is based on Riguer's internet research and the undescribed activities of an unnamed third party. While it may be true that [plaintiff] need not have personally encountered the alleged barrier, she still must have personal knowledge of it to establish standing. *See Rutherford v. Evans Hotels, LLC*, Case No. 18-435 (S.D. Ca. Sept. 3, 2020) (citing *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040 (9th Cir. 2008)). Neither Riguer's purported analysis nor the out of court statements of an unnamed person are admissible or sufficient and certainly cannot carry Plaintiffs' burden of proving that this Court has subject matter jurisdiction.

As with the lack of facts in support of the allegation of actual knowledge of a barrier, the Complaint is generally devoid of facts necessary to support the countless legal conclusions. The Complaint consists of endless repetition of the same legal conclusions, sprinkled with factual allegations that conflict with each other, and boilerplate citations to statutes or case law with generic references to the entire Complaint as support. Pled in this fashion, the Complaint fails even the most liberal pleading standards.

Finally, this case should be dismissed for improper service of process under Fed. R. Civ. P. 12(b)(4). Although DFA did have actual knowledge of the filing of the Complaint, actual knowledge is not a bar to relief. Plaintiffs first attempted service on the Defendant at Defendant's mailing address at the UPS Store in November. By the time the November "service" was made, the Complaint had been filed, but the served complaint was accompanied by a blank certificate of service. Plaintiffs re-served the Complaint at the UPS Store in January 2021, only after Defendant sought an extension of time to answer, while also trying to engage Plaintiffs in ultimately futile reasonable accommodation discussion. While substituted service may be appropriate under certain circumstances, in light of the Plaintiffs' inequitable conduct, service should not be deemed completed, where Plaintiffs had Defendant's agent's actual contact information, and made no attempt to serve the agent personally or in accordance with California State Law, each as

required by Fed. R. Civ. P. 4.

Accordingly, Plaintiffs' Complaint should be dismissed in its entirety by this Court.

## II.    STATEMENT OF FACTS

### A. Plaintiffs' allegations

Plaintiff Wiggins alleges that she intended to go to the Defendant's property to access Defendant's rental services. (Complaint ¶8). She alleges that she was deterred, however, by "actual knowledge of the overt and obvious physical and communication barriers that exist at Defendant's property" and that it would be impossible or extremely difficult for her or McKissick to physically access Defendant's on-site rental services, and as such, it would be a "futile gesture" for her to go to the Property. (Id.) Plaintiffs allege that McKissick has cerebral palsy, uses a wheelchair for mobility and is "totally dependent" on his sister Plaintiff Wiggins. (Id. at ¶8).

Wiggins also alleges she attempted but could not use "Defendants' [sic] website" because of "great difficulty due to her brother's disabilities." (Id. at ¶ 9). Plaintiff Wiggins does not identify "Defendant's website," or what the relationship is between *her* ability to use any website or her brother's disabilities. Wiggins alleged that she could not determine whether Defendants' rental office and common areas were physically accessible to her brother (Id.).

It is worth noting that at no point does Wiggins claim to suffer from any type of disability, which makes her purported inability to access Defendant's services or any website both perplexing and irrelevant. Nor does she claim that the services she is seeking are for the benefit of McKissick. In fact, short of listing his several disabilities (Id. at ¶8), it is unclear exactly why McKissick is involved in this litigation as nowhere is it claimed that he wished to access Defendant's services or wished to determine whether access to Defendant's services would be available to him if he did wish to access them. That the Complaint alleges that McKissick is "totally dependent" on Wiggins due to cerebral palsy is insufficient to allege that he

is also dependent on McKissick to make decisions on his behalf, or that she has even has the legal authority to make such decisions.

After being unable to navigate "Defendants' website," Wiggins asked the UAAAC to assist her in obtaining accessibility information. (Id.). The Complaint alleges that the UAAAC undertook an investigation that consisted of Sharon Riguer, president of the UAAAC, visiting the Property's Internet websites, presumably the same one that was inaccessible to Wiggins (Id., at ¶10). Non-party Theodore Pinnock also investigated the property but there are no facts describing what he did that would constitute an investigation.   The results of Riguer's Internet investigation were attached as Exhibit B to the Complaint and signed by Sharon Riguer, even though the report was supposedly prepared at the request of the UAAAC and Plaintiffs' counsel. (Id.) Plainly that report and its contents are multiple levels of hearsay. It is unclear what Riguer was able to obtain from the "websites" that Wiggins was not able to obtain.

The UAAAC is also alleged to have sent an unnamed member to the Property, who determined alleged "open and obvious" physical barriers for access to Defendant's on-site rental services. (Id.). Wiggins alleges she was deterred by her "actual knowledge" of the existing barriers from visiting the property as a result. (Id.) Given that Wiggins neither visited the property nor was able to visit the "Defendant's website," the Court can infer that Wiggins' knowledge is based on the information supplied to her by her agents, Riguer and Pinnock, and some third unnamed person. She then purports to have made a written request for accommodation. (Id.). She intends to return at the end of this action to obtain rental information and verify that communication and physical barriers have been removed. (Id.) The Complaint also references a male Plaintiff that had actual knowledge of barriers, determined it would be futile for him to go to the Property, but intended to return. (See Id. ¶41.)

The Complaint alleges that the UAAAC diverted its time and resource from its "normal purposes" because of Defendant's barriers to services. (Id. at ¶11). The UAAAC alleges the efforts it undertook to survey and investigate Defendant's

property in July 2020, which all appear to be via the Internet, but the "club" says it also "retained contractors" that are not named or identified anywhere within the 32 page Complaint and 18 pages of exhibits. (Id.) The UAAAC also "caused a physical access consultant to be retained to survey Defendants' [sic] facility" but said consultant is never named. (Id.) Again, the "report" is signed by UAAAC President Riguer. (Id. at Exhibit B [Doc. 1-2], p. 10).

The Complaint then lists various non-plaintiff "members" and alleges particular impediments that they all had communicating with the Defendant through the internet. Mary Wambach did not find any video texting, TTY, California Relay System or any other way of texting Defendants. (Id. at ¶12). Theodore Pinnock is alleged to have used the Internet and not found any way to text Defendant even though he has a US Skype number and a cellphone for texting, including the capability to text online. (Id.). Jack Pinnock is alleged to have difficulty reading small print on the website of Defendants' Internet site. (Id.). Jessie James Lee also had difficulty reading the small print on Defendants' Internet site. (Id) Finally, McKissick is included, but in contrast with the other "members" only his alleged disabilities are mentioned not  the  impediments those disabilities gave rise to in communicating with the Defendant.  (Id.).

It is then claimed that in addition to Wiggins, the UAAAC itself intends obtain rental services from the Defendant. (Id. at ¶26).  This would be difficult given that there is no commercial space at the property, and rather inefficient since the UAAAC and its agents appear to operate primarily from the Philippines. The Complaint alleges that due to the alleged barriers, the UAAAC, its members, Wiggins and McKissick are all deterred from attempting further access until the barriers are removed. (Id.). In fact, the Plaintiffs allege because the UAAAC investigated the property, all its members are now imbued with the actual knowledge and full deterrent effect of alleged discriminatory conditions. (Id.) The UAAAC and Wiggins plan to visit the property to obtain rental information and verify whether Defendants' allegedly discriminatory conduct has ceased. (Id.).

B.      Allegations Regarding Investigation and Notice

The Complaint alleges that on July 12, 2020 the unnamed UAAAC member attempted to make a request to Defendant for reasonable accommodation at the Property. (Id. at ¶15). Other than the specific date, there are no facts alleging who made the request, to whom was the request made, what was the nature of the request, or what was the response to the request. The Complaint alleges that the unnamed UAAAC member also made a second nondescript request for reasonable accommodation on August 20, 2020. (Id.) Plaintiffs allege that they mailed a written request letter for a nondescript reasonable accommodation at some unspecified time in November, 2020. Finally, both Plaintiffs allegedly emailed Defendant a written request for a nondescript reasonable accommodation on November 22, 2020. (Id.) Plaintiffs do not explain how they got Defendant's agent's email address, but the Court can reasonably infer that the email address is publicly available since Plaintiffs also never allege having spoken to this agent. Plaintiffs filed their Complaint November 26, 2020, which was Thanksgiving, and only 4 days after the email and only verifiable request for accommodation was made. Plaintiffs delivered an unfiled copy of the Complaint to DFA's mailing address on November 30, 2020, without a certificate of service.  Plaintiffs apparently delivered the Complaint to the process server on the same date. See [Dkt. 15].  Plaintiffs fail to mention that Defendant responded to the email and Complaint and received no subsequent communications from the Plaintiffs until the Complaint was served by substituted service again in January 2021.

C.      Plaintiffs' Theories of Liability

Plaintiffs allege the following causes of action: (1) Discriminatory Practices in Housing Accommodations - Fair Housing Act Claims; (2) Violation of the "California Fair Housing Act"; (3) Claims Under the Americans with Disabilities Act of 1990; and (4) Discriminatory Practices in Public Accommodations - Claims Under California Accessibility Laws.

D.   Summary of Meet and Confer Efforts

On November 22, 2020, Plaintiff Wiggins and UAAAC sent an email to Defendant followed by a certified letter dated November 25, 2020. On or about November 30, 2020, a copy of the Complaint was delivered to Defendant's mailing address, without a completed certificate of service.   On December 9, 2020, in response to the Complaint and email, Defendant sent Plaintiffs a letter by email and certified mail asking for further clarification of their claims. Plaintiffs did not respond to either communication. On January 14, 2021, Defendant was served with the Complaint, filed November 26, 2020. Defendant emailed Plaintiffs' counsel, Mr. Wakefield, on January 20 and 27, 2021 to again attempt to engage Plaintiffs in the interactive process.  Plaintiffs replied on January 27, 2021 suggesting a Stipulation to Extend Time to Answer be filed. Defendant's counsel began a lengthy email correspondence with Plaintiffs' counsel beginning on February 2, 2021 regarding issues of settlement and the validity of the claims set forth in the Complaint. Believing that with more time the Parties could reach a settlement, the Defendant filed a joint Second Stipulation for Extension of Time to File Answer, on February 23, 2021, and the Defendant's First Application For Stay and Early Mediation filed March 1, 2021. Both were denied. Defendant sent a final request, on March 1, 2021, via email correspondence to Plaintiffs' counsel to meet and confer with regards to the issues which now form the basis for our motion to dismiss. (Declaration of Tatiana Ingman).

III. Argument

A. Plaintiffs Lack Standing

Plaintiff UAAAC is a member club and lacks standing under *Hunt v. Washington Apple Adver. Comm'n*,  432 U.S. 333 (1977) and *Havens Realty Corp. Coleman,* 455 U.S. 363, 379 (1982). Representational standing by an organization generally is unavailable where, as here, a particular individual's particular disability

is the gravamen of the cause of action, and that individual is already a plaintiff. Representational standing is further unavailable in the absence of facts demonstrating discriminatory conduct by the Defendant toward UAAAC (or anyone). Representational standing is unavailable in the absence of facts demonstrating that Defendant's purported conduct impeded UAAAC's mission. Here, UAAAC states that its mission is to advocate on behalf of its members with disabilities when their civil rights and liberties have been violated. Id. at ¶10. *See Fair Housing Council V. Roommate.com LLC,* 666 F.3d 1216, 1219 (9th Cir. 2012)(organizational standing available to assert FHA claims where organization diverted resources to outreach to the public to educate them of their rights vis-à-vis defendant's specific conduct, not to the pursuit of litigation claims).

This Court also lacks subject matter jurisdiction over the claims of the individual Plaintiffs due to their failure to allege an injury in fact, as discussed more fully herein.

## B. Plaintiffs Fail To State A Claim On Which Relief Can Be Granted

"A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Furthermore, the allegations at the pleading stage must plausibly suggest a right to relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. At 556. When reviewing a Rule 12(b)(6) motion to dismiss the court generally "accept[s] the plaintiffs' allegations as true and construe[s] them in the light most favorable to plaintiffs." *Gompper v. VISX*, Inc., 298 F.3d 893, 895 (9th Cir. 2002) (citation

omitted). However, the court need not credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001).

Here, Plaintiffs' Complaint is nothing more than pages of conclusory statements and legal citations to the case law that provides the framework for Plaintiffs' conclusory factual allegations. For the sheer number of conclusory statements alone, Plaintiffs fail to plausibly suggest they are entitled to any relief.

1. **Plaintiffs' causes of action based on the FHA should be dismissed**.

i.      *Plaintiffs Cause of Action for Violation of the Fair Housing Act 42 U.S.C. § 3604(f)(1) by Failure to Have a Policy for Receiving Prospective Tenant Requests, Failure to Train Staff and Failure to Make the Policy Known to Plaintiffs Should be Dismissed for Failure to State a Claim because there is no Affirmative Duty to Have Such Policies.*

Section 3604(f)(1) makes it unlawful to discriminate in the rental of a dwelling, or to otherwise deny a dwelling to any renter because of a handicap of: (a) the renter, (b) a person residing in or intending to reside in that dwelling, or (c) any person associated with the renter. To prevail on a claim under 42 U.S.C. § 3604(f)(1) a plaintiff must prove discrimination in the rental, or denial, of a living space attributable to the plaintiff's handicap, the handicap of a cohabitant or potential cohabitant, or the handicap of a person associated with the plaintiff. Plaintiffs do not allege any link whatsoever (let alone a causal link) between anyone's disability and Defendant's purported denial of "full and equal access to the dwelling." Instead, Plaintiffs allege that Defendant failed to comply with affirmative duties to maintain policies. There is no such per se duties under the FHA, and this cause of action should be dismissed.

ii. *Plaintiffs Cause of Actions For Failure To Engage In The Interactive Process In Violation Of The FHA And The California Fair Employment And Housing*

*Act and Make Reasonable Accommodations Should Be Dismissed For Failure To State A Claim.*

It is axiomatic that to assert reasonable accommodation claim, plaintiff must plead, among other things, that accommodation of a disability may be necessary, is reasonable and that defendant refused to make the requested accommodation. *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

The Supreme Court has explained that while Rule 8 does not require detailed factual allegations, it does demand more than unadorned, "the defendant unlawfully harmed me accusations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiffs' fail to plead facts to support of the allegation that an accommodation of a disability may be necessary, that accommodation requests were made to Defendant, that those requests were reasonable, that Defendant refused to make the requested accommodations and failed to suggest alternatives. In other words, Plaintiffs have failed to plead the basic facts that are necessary to survive a motion to dismiss. Plaintiffs do allege that 3 months after purported site visits, they wrote to Defendant in November 2020 seeking reasonable accommodation.  The Complaint was filed 4 days later, on Thanksgiving. Under the circumstances, the Plaintiffs should also plead facts that show that even if Defendant failed to respond, that failure was unreasonable given the short time frame.

Because Plaintiffs fail to allege facts sufficient to support any claim for relief on the basis that requests for accommodation were made, were denied, and were reasonable, this Court can and should dismiss with prejudice this Complaint in its entirety.

iii.    *Plaintiffs' Claim of Discrimination in Violation of 42 U.S.C. § 3604(f)(2) Should be Dismissed for Failure to State a Claim*

Plaintiffs allege that Defendants discriminated against them in connection with the rental services provided within a rental office, and that Defendant failed to remove communication and architectural barriers to permit access. To the extent that

Plaintiffs are claiming that Defendant was required , even after an interactive process, to move walls or build ramps, and the failure to do so was a violation, those claims cannot be sustained on the facts alleged, particularly where Plaintiffs do not allege what accommodations were requested, who were they requested of and what happened after the requests were made.

      *iv.*    *Plaintiffs Allegations of Discrimination in Violation of 42 U.S.C. § 3604(c) in Regards to Advertising Should be Dismissed*

Plaintiffs allege that Defendant discriminated against them in regards to published notices, statements, or advertisement that "suggest to an ordinary reader a preference to attract tenants without disabilities" and that "Defendants' [sic] Internet advertising regarding rental services has an unlawful disparate impact on Plaintiffs." Complaint ¶32. Plaintiffs have failed to plead sufficient facts in support of this claim, such as what did Defendant publish, what in those publications would suggest to an ordinary reader a preference to attract tenants without disabilities (and which disabilities, all disabilities?). The Supreme Court has held that a plaintiff alleging disparate impact who fails to allege facts at the pleading stage or produce statistical evidence demonstrating causal connection cannot state a claim. *Tex. Dep't of Haus. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.* 135 S.Ct. 2507, 2523 (2015). Plaintiffs have not even come close to meeting this standard, and this cause of action should be dismissed.

    2. **Plaintiffs' Claims of Violations of the California Fair Housing Act Should be Dismissed**.

In their Second Cause of Action, Plaintiffs allege "Violations of the California Fair Housing Act" and seek relief under California Government Code Sections 12927 and 12955.2. (Complaint, at ¶33). However, these statutes only contain definitions pertaining to other statutes, and these statutes provide no basis for a claim for relief. Further, to the extent this claim is based on Defendant's purported

discrimination against Plaintiffs or failure to make reasonable accommodations, Plaintiffs have failed to allege sufficient facts that even plausibly sustain these causes of action. Accordingly, Plaintiffs' Second Cause of Action can and should be dismissed.

### 3. **Plaintiffs' ADA Claims Fail And Should Be Dismissed**.

i.       *UAAAC Lacks Standing to Pursue ADA Claims*

This cause of action appears to be brought by UAAAC on behalf of its members that are communication impaired and that are not plaintiffs to this Complaint. Plaintiffs claim they have standing under *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093 (9th Cir. 2017)("*CREEC*"). But *CREEC* did not concern let alone expand organizational standing. In *CREEC*, the organizational plaintiff voluntarily dismissed its claims before the district court, id. at Fn.2, and the issue was whether the *disabled named plaintiffs* had standing. *CREEC* does nothing to alter the ordinary representational standing, or modify the substantive requirements under the ADA that require a plaintiff to prove that they are part of the protected class.

ii.      *Plaintiffs' ADA Claims Should be Dismissed*

Plaintiffs allege a number of causes of action under the ADA based on facts generally plead in the Complaint. But the Complaint is devoid of fact that show (1) that Plaintiff is a person with a communication disability under the meaning of the ADA (to the extent that that is the disability being claimed- its not clear); (2) that Defendant is a public accommodation as defined in Title III; (3) that Plaintiff was denied an opportunity to participate or benefit from defendants services or programs on the basis of that disability; (4) that Defendant provided unequal benefit; (5) that Defendant's have photographs, and that those photographs discriminate; (6) the Defendant "screened out" Plaintiffs; (7) that Defendant made repairs and administrative changes which violated the ADA. Nor do Plaintiffs allege how they made reasonable accommodation requests, and how those requests were addressed,

or not. To the extent Plaintiffs allege that Defendant failed to comply with the Federal ADA Accessibility Guidelines or California Building Code Requirements, Plaintiffs fail to allege that these statutes apply to Defendant, and failed to allege facts in support. Plaintiffs claims of failure to make alterations are similarly frivolous because Plaintiff has not pled what alterations were required or requested, let alone that they were also reasonable and rejected.

Rather than allege actual injuries grounded in actual facts, the Complaint is nothing more than a list of potential causes of actions. This is exactly the kind of pleading that the Supreme Court described as insufficient in *Iqbal*. Because Plaintiffs have failed to state their claims, they should be dismissed.

4. **This Court Should Decline To Exercise Jurisdiction Over The Remaining State Law Claims**

Section 1367(c)(4) allows a district court to use its discretion to decline to exercise supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 29 U.S.C. §1367(c)(4). "[P]endant jurisdiction is a doctrine of discretion, not of plaintiffs right." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997).

Subject matter jurisdiction over Plaintiffs' state law claims rests upon supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

There are compelling reasons for declining to exercise supplemental jurisdiction over these state law claims, which seek remedies that Congress clearly intended to preclude under the ADA. The fact that an ADA violation may serve as an element of state law claim does not automatically confer federal question jurisdiction. *Pickern v. Best Western*, 194 F.Supp.2d 1128, 1131 (E.D. Cal. 2002). "Unlike the California Disabled Persons Act and the Unruh Civil Rights Act, both of which provide damages for violations, the only remedy available to a private plaintiff under the ADA is injunctive relief." 42 U.S.C. §12188(a)(2). Id.

Apart from the federal claims that, as discussed above, are patently frivolous, Plaintiffs remaining claims do not present a federal question. See *Wander v. Kaus*,

304 F.3d 856, 859-60 (9th Cir. 2002) (ADA-based state law claims seeking damages do not give rise to federal question jurisdiction). Nor is there a claim of diversity jurisdiction with attendant minimum amount in controversy. See 28 U.S.C. §1332.

Where the only federal claim-based causes of action are meritless a state claim is moot and should be dismissed, comity and fairness strongly favor dismissal of the remaining state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1966) ("[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them the surer-footed reading of the law.")

The Court may consider whether declining to exercise jurisdiction serves the principles of economy, convenience, fairness and comity. City of Chicago, supra, 522 U.S. at 172-3 (1997). The principle of comity strongly favors dismissing the state law claims. See *Executive Software N Am., Inc. v. United States Court for Central District of Cal.*, 24 F.3d 1545, 1553 (9th Cir. 1994) ("When novel issues of state law are presented, though, considerations of judicial economy are not determinative.") (quoting *Gingerich v. White Pigeon Community Schs.*, 736 F.Supp. 3 147, 149-51 (W.D.Mich.1990)).

In deciding whether to exercise supplemental jurisdiction, a court must consider the underlying objective of "most sensibly accommodating the values of economy, convenience, fairness, and comity." *Exec. Software N Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1557 (9th Cir.1994) (internal quotations omitted). A district court need not "articulate why the circumstances of [the] case are exceptional" to dismiss state-law claims pursuant to 28 U.S.C. § 10 1367(c)(l)-(3). *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478-79 (9th Cir. 1998) (quoting *Exec. Software*, 24 F.3d at 1557). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie- Mellon Univ. v. Cohill*, 484 U.S. 343, 350

n.7 (1988).

Moreover, where as here, the conduct and timing of the proceedings indicates that they are less about remediating harms and more about pursuing damages, the Court may properly decline to exercise supplemental jurisdiction. *See Molski v. Winery*, 381 F. Supp. 2d 1209, 1211 (C.D. Cal. 2006).

Accordingly, this Court should decline to exercise supplemental jurisdiction under 28 U.S.C. §1367 over the remaining state law claims.

C. This case should be dismissed under Rule 12(b)(4).

Finally, this case should be dismissed for improper service of process under Fed. R. Civ. P. 12(b)(4). Although DFA did have actual knowledge of the filing of the Complaint, actual knowledge is not a bar to relief. Plaintiffs first attempted service on the Defendant at Defendant's mailing address at the UPS Store in November. By the time the November "service" was made, the Complaint had been filed, but the served complaint was accompanied by a blank certificate of service. Plaintiffs re-served the Complaint at the UPS Store in January 2021, only after Defendant sought an extension of time to answer, while also trying to engage Plaintiffs in ultimately futile reasonable accommodation discussion. While substituted service may be appropriate under certain circumstances, in light of the Plaintiffs' inequitable conduct, service should not be deemed completed, where Plaintiffs had Defendant's actual contact information, and made no attempt to serve its agent personally or in accordance with California State Law, each as required by Fed. R. Civ. P. 4.

IV. CONCLUSION

For the foregoing reasons, Defendants respectfully requests that its motion to dismiss the federal claims pursuant to FRCP 12(b)(l), 12(b)(4), and 12(b)(6) should be GRANTED, and that this Court should DECLINE to exercise supplemental jurisdiction over the remaining state claims.

DATED: March 5, 2021                    LAW OFFICE OF TATIANA INGMAN

1

By: /s/ Tatiana Ingman

2

Attorney for Defendant DUPART FAMILY
ASSOCIATES, LLC., ET AL.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28