

**UNITED AFRICAN-ASIAN ABILITIES CLUB**
*Florida: 5335 Falling Water Dr. Orlando, FL 32818*
*California: 515 P St., #207 Sacramento, CA 95814*
*P: 619-866-4576 * F: (916) 330-3339*

**Accessibility Auxiliary Aid, Program, Service, Rules, Practices, Policy
And Reasonable Modification Report**

I. **Preliminary Statement And Caveats**

The United African Asian Abilities Club and Lightning Law, APC requested that this access report be prepared as part of the initial complaint filed with the Court. It is the understanding of the author of this report that the United African Asian Abilities Club and Lightning Law, APC conducted a site inspection of the property before the complaint was filed. The United African Asian Abilities Club and Lightning Law, APC provided the author of this report with the photographs that were taken during the site inspection. This report is only a preliminary report. The author of this report may or may not be the expert for the purposes of a motion for summary judgment or a jury trial.

**Property Information:** DUPART FAMILY ASSOCIATES, LLC
**Property Location:** 1535 North Detroit Street Los Angeles, CA 90046
**Property Parcel No.:** 5548-011-058

II. **Qualification**

EVIDENCE CODE SECTION 720 – 723. 720. (a) A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert. (b) A witness' special knowledge, skill, experience, training, or education may be shown by any otherwise admissible evidence, including his own testimony.

III.    **Reasonable Modification Investigation And The Findings Of The On-Site Investigator**

**Under FHAA and ADA barriers can be addressed by the reasonable accommodation and reasonable modification rules. Prospective renters with disabilities desire to live in accessible housing. It makes no sense for them to complete a rental application without first investigating the access of the apartments and making FHAA requests.**

**In this case, Plaintiff Club investigated the subject apartments and found barriers. These barriers limit the enjoyment of the apartments.**

**In this case, the first FHAA issue is receiving and processing FHAA requests. Defendants have an affirmative duty to have a process for responding to said requests. Plaintiffs sent said requests to the public street and email addresses.**

**On July 12, 2020 and August 20, 2020, Plaintiffs attempted to make a request at the property for reasonable accommodation and reasonable modification. On November 22, 2020, Plaintiffs also made their reasonable accommodation and modification request to Defendants in an email. Finally, in November, 2020, Plaintiffs mailed a letter to Defendants that made a request for reasonable accommodation and reasonable modification. No one responded as of the date of the filing of the Civil Complaint.**

The UAAAC investigator went to the property for UAAAC member to determine if UAAAC member could live at the apartments. The investigator found the following:

Plaintiff Club member went to Defendant's apartment facilities at the Property in July, 2020, and a second time in August, 2020, to access the rental services. The Named Individual Plaintiff has actual knowledge of Defendants' overt and obvious physical barriers, that relate to this Plaintiff's disabilities, to Defendants' Property on-site office that provides rental services that this Named Individual Plaintiff intended to visit in July, 2020, and a second time in August, 2020, but this Plaintiff was deterred from accessing Defendant's rental services at the office located on the Property. Defendants provide rental information, rental applications, and other rental services at the on-site office. Defendants' agents confirmed to the Plaintiffs that rental information, rental applications, and other rental services were available at the on-site office. Defendants' rental services at the Property office are not accessible. Defendants' path of travel from the sidewalk to the office is not accessible since it has step changes in level along the path. There are numerous step changes in level that must be traversed in order to access the entrance leading into the complex. Defendant's callbox is located too high to be accessible. There are also uneven surfaces and numerous step changes in level that must be traversed to access the rental office entrance. Defendant's rental office entrance is not accessible due to a significant step change in level at the office door threshold that is not beveled or ramped. Additionally, Defendants office entry fails to provide the required level landing of sufficient dimensions. Additionally, Defendant's rental office entry door operating hardware is a round knob. The Defendants do not provide the required directional signage as to the designated path of travel from the sidewalk to Defendant's office. The Named Individual Plaintiff uses a wheelchair for mobility and these step changes in level and the other stated issues cause the path of travel and the office entry to be not accessible. Defendants failed to provide any directional signage indicating an alternate accessible path of travel to the office.

Defendants failed to provide the required fully compliant van accessible disabled parking for the office.  Defendants failed to provide a dimensionally compliant van accessible disabled parking space and disabled parking access aisle, the required disabled parking signage, including tow away signage, fine signage, ground markings, and failed to locate said parking on a level surface and nearest the office.   Defendants also failed to provide compliant tow away signage. The Named Individual Plaintiff requires the use of a compliant van accessible disabled parking space to safely exit and re-enter the vehicle.  Defendants' failure to provide the required compliant disabled parking, disabled parking access aisle, disabled parking disability signage, access aisle, and disability ground markings, such that the Named Individual Plaintiff is not able to safely park at Defendants' establishment since the individual Plaintiff may be precluded from exiting or re-entering the vehicle if the disabled parking and disabled parking signage is not present and others park improperly. Additionally, Defendants failed to provide the required accessible path of travel from the parking area to the office since the existing path of travel has step changes in level.  Additionally, Defendants overt and obvious communication barriers were also present at the office in July, 2020, and a second time in August, 2020. Defendants failed to provide any method of text communication with their rental services and failed to publish any information as to how to initiate text communication contact. The Named Individual Plaintiff had actual knowledge of these barriers at Defendants' Property that Plaintiff intended to visit, and the Named Individual Plaintiff was deterred from accessing Defendants' rental services at the Property again in November, 2020.

IV. **Auxiliary Aid Barriers**

    A. **Phone**

**This matter involves effective communication via TTY.  See Exhibit A. In this case, Plaintiff Club investigated the subject apartments and found Defendants had no TTY/TDD, they had no manner of providing rental services at the manager's office despite steps leading thereto and the Internet advertising had no reasonable accommodation information.**

**Defendants advertises on the Internet, the following are the links to the advertising: apartmentguide.com, trulia.com, zillow.com, hotpads.com. Defendants have the right to log in, to modify the content of the advertising. Therefore, Defendants control the advertising. All of the ads contain a number to call. However, the ads do not include California Relay System number, the TTY number or any other way for a deaf person or a person with a speech condition to communicate with the Defendant regarding the rental services.**

**Having a TTY available is also essential, the cost of a TTY machine is $300-$1000 depending on what type of model you purchase. (source: Communications of the ACM May 1992 v35 n5 p80)TTYs (TDD) can be rented from US West for five dollars a month.**

    B. What is a TTY?

The teletypewriter, or TTY, is a device that lets people type back and forth using regular telephone lines.

Teletypewriters were used for many years by news organizations and businesses. These organizations used teletypewriters to send and receive news using existing telephone lines. Other machines were directly connected to each other on private lines. In the 1960's, these teletypewriters were modified for use by deaf people. Robert Weitbrecht, a deaf physicist, designed an acoustic coupler that could convert the electrical signals coming from the TTY to activate the keys of the TTY and print the message.

The teletypewriter has been called by several names, including Telecommunication Device for the Deaf (TDD) or Text Telephone (TT). However, a national organization, Telecommunications for the Deaf, Inc. (TDI), has taken a firm stand and endorses the acronym of "TTY" to represent all text telephones.

TDI publishes a national directory and guide to resources that are available to enhance telecommunications accessibility for persons who are deaf, hard
of hearing, deaf-blind, and speech impaired.

What equipment is needed for a TTY conversation and how much does it cost?
TTY equipment weighs two to five pounds and includes a three or four-row keyboard, a display for reading the typed message, a modem or modular
connection, AC power, and rechargeable, replaceable batteries. It can also have a printer/auto answering machine. There are many different models and styles
of TTYs for sale. Prices range from $200 to $1,000. They can be purchased from the manufacturer, catalogs, and electronics stores.

C. **Disparate Impact From The Internet Photographs**

**Defendant advertises the subject property on webs sites it controls and others, including but not limited to the following websites: apartmentguide.com, trulia.com, zillow.com, hotpads.com. With each of the said websites, the user controls the content of the page for the user. Therefore, the defendants control the content for each of the websites. Defendants' NSAs state the following about the property: The property was built in 1985 and has 39 units. The rent is approximately: $1,000. The internet provides a wealth of information regarding the property. The internet advertises that the property has amenities that include: Pet Policy No Pets Allowed, Parking Garage, Lease Length 12 Months, Laundry Facilities, Elevator, Sauna, Air Conditioning, Smoke Free, Dishwasher, Granite Countertops, Stainless Steel Appliances, Kitchen, Hardwood Floors, Controlled Access.**

The following are the photographs downloaded from the Internet:

 The stairway and the kitchen area.

 The apartments view.

 The bedroom area.

Exhibit B

 The bathroom area.

 The bedroom area.

 The closet area.

Photographs Narrative:

The Internet photographs suggest a preference for people without disabilities. The Internet picture of the living area does not provide any depiction of any access for people with disabilities. The Internet picture of the dining area does not provide any depiction of any access for people with disabilities. The Internet picture of the bedroom area does not provide any depiction of any access for people with disabilities.  The Internet picture of the apartments view does not provide any depiction of any access for people with disabilities. The Internet picture of the closet area does not provide any depiction of any access for people with disabilities. The Internet picture of the stairway area does not provide any depiction of any access for people with disabilities. The Internet picture of the kitchen area does not show how the kitchen can be modified for a person with a disability. The Internet

picture of the bathroom area does not show how the bathroom can be modified for a person with a disability.

**The following photographs were obtained by the Plaintiffs at the Property:**

1. **ACCESSIBLE ROUTE:**

The path of travel with steps without access way signs. Without way signs the public and residents would be required to search for the accessible entrance or surmise that there is not an alternative accessible entrance.

The path of travel with steps without access way signs. Without way signs the public and residents would be required to search for the accessible entrance or surmise that there is not an alternative accessible entrance.

 Also, the doorknob, which required tight twisting. Many elderly and residents have difficulty grasping round doorknobs.

 The path of travel with steps without access way signs. Without way signs the public and residents would be required to search for the accessible entrance or surmise that there is not an alternative accessible entrance.

 The path of travel with steps without access way signs. Without way signs the public and residents would be required to search for the accessible entrance or surmise that there is not an alternative accessible entrance. Also, the doorknob, which required tight twisting. Many elderly and residents have difficulty grasping round doorknobs.

 The path of travel with steps without access way signs. Without way signs the public and residents would be required to search for the accessible entrance or surmise that there is not an alternative accessible entrance. Also, the doorknob, which required tight twisting. Many elderly and residents have difficulty grasping round doorknobs.

 Also, the doorknob, which required tight twisting. Many elderly and residents have difficulty grasping round doorknobs.

**2. PARKING:**

 Additionally, the parking lot lacks accessible parking. The accessible parking is the first accessible feature that people with disabilities look for. The accessible parking must have the correct access aisle, which is 5x9 or for the van 8x9, must have the International Symbol of Accessibility, must have the $250 tow away sign, must have the van accessible sign and must have the tow away sign at every parking lot entrance. Also, the parking space must be the closest to the entrance.

3. **STAIRWAYS:**

Moreover, the stairways had no color contrasting for people with eye conditions. In fact, none of the steps found had color contrasting. People with sight challenges have a problem distinguishing between colors that are very similar. If the person with a sight limit cannot distinguish between colors within the path of travel or steps the person will not be able to traverse within the environment. Color contrasting allows people with sight conditions to distinguish between objects within the environment and to enable them to safety negotiate traversing the environment.


V.      **Attached Photographs Were Obtained At The Property**
        The photographs attached after the signature block were obtained at the Property.


**Dated: November 26, 2020**




                        **By:**       *SharonRiguer*
                                      **SHARON RIGUER,**
                                      **President of United African-Asian Abilities Club**













